# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Hon. Joe Kunschik, Commissioner
Bureau of Labor Statistics
Austin, T e x a s

Dear Sir:

> Re: Opinion No. O-2018
> Is a person engaged in the activities,
> as described, within the provisions of
> Articles 5208-5221, Inc., R.C.S., and
> Articles 1584-1593, Inc., P.C., and re-
> quired to obtain an employment agency
> license?

You have requested our opinion touching the construction of Articles 5208-5221, inclusive, Revised Civil Statutes of Texas, and Articles 1584-1593, inc., Penal Code, in the particulars set out in your letter, which we quote from as follows:

> "A booking agent keeps in constant touch with all professional wrestlers, keeping an index of their performances, their ability as demonstrated in the ring, their physical fit-ness, and training, and their present location. He also keeps a chart and record of the per-sonal drawing power of each such professional wrestler as to each locality.

> "'Based upon such complete charts and records, the booking agent then submits the name and a short description (if the promoter is not familiar with the parti-cular wrestler) and the various promoters are furnished a list of perhaps five, six or eight wrestlers who are available for a particular night. The promoter then selects from this list so furnished to him the wrestlers he desires to match, selecting perhaps two, four, or six of

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. Joe Kunschik, Commissioner, page 2

the names, and discarding the remainder.
The services of the wrestler and the agree-
ment as to the percentage or scale of
remuneration is decided between the pro-
moter and wrestler; the booking agent
does not attempt to control the amount of
percentage paid, except that he stipulates
that the promoter will have to guarantee
a minimum amount to cover traveling ex-
penses of the wrestler.

"'The booking agent receives no money
or pay whatsoever from the wrestler....'
but 'does receive from the promoter a per-
centage of the gross intake of the entire
show. This percentage is paid by the
promoter and is not paid by the wrestlers,
nor deducted from their earnings ......'

"'The services of the booking agent are
desired by the various promoters.....' in
many instances, and this service is also
desired by the wrestlers in many instances.

"This Department has, since the issuance of
an opinion dated January 21, 1936, by the At-
torney General's Department, contended that such
a booking agent should obtain an employment
agency license before carrying on such opera-
tions. The opinion referred to was signed by
Mr. Russell Rentfro, who was at that time an
assistant attorney general under Hon. William
McCraw, and a copy of said opinion is attached
for your reference.

"   *   *   *   .

"As we understand the matter, various
wrestlers seek employment in one show on some
particular night, and they also desire to ob-
tain employment from other promoters on as many
successive nights as possible. We understand
that the booking agent advertises the qualities,
abilities, and reputations of such wrestlers,

and that such agent is interested in seeing that these wrestlers obtain employment in order that the agent may obtain from the promoters certain fees that have previously been agreed upon between the promoter and the agent.

" * * * ."

We have carefully considered this matter since the conclusion we have reached necessitates the overruling of the former opinion of this department, dated January 21, 1936, referred to in your communication, which you state you have been following.

Article 5208, Revised Civil Statutes, reads, in part:

"DEFINITIONS
The term 'Employment Agent' means every person, firm, partnership or association of persons engaged in the business of assisting employers to secure employees, and persons to secure employment, or of collecting information regarding employers seeking employees, and persons seeking employment. The term 'Employment Office' means every place or office where the business of giving intelligence or information where employment or help may be obtained or where the business of an employment agent is carried on. * * * ."

Article 1584 of the Penal Code contains the same definitions.

These definitions determine the activities regulated by Articles 5208-5221, inclusive, supra, and Articles 1584-1593, inclusive, supra, and the question which must be answered is whether the situation described in your letter is covered thereby. Clearly, these statutes do not expressly do so; they may be held to do so only if such is the necessary implication therefrom.

We believe it manifest that the booking agent, or broker, described in your letter, is not the usual and well-recognized "Employment Agent" and does not

maintain the usual and well-recognized "Employment Office". Ordinarily, an employment agent deals with applicants for jobs in the sense of regular employment by an employer, under which a regular wage or salary is paid, creating the typical relationship of master-servant, employer-employee, as distinguished from an "engagement" of short duration for a performance, or a show, or a wrestling match, with the compensation payable not on a salary or wage basis, but on an engagement or performance basis.

Recognizing this very real distinction, we must decide if these statutes were intended to regulate the booking agent, or broker, engaged, only, in assisting the promoters desiring the wrestlers for a performance upon a particular night in securing such wrestlers, and the wrestlers themselves in making contact with the promoters in the manner described.

In Section 6 of the Act (Acts 1923, 38th Leg., R.S., p. 79; Art. 1587, P.C.) one of the regulations imposed reads as follows:

" * * * such employment agent shall also enter and keep in a well-bound book the name and address of every person, firm, corporation or association of persons, who shall make application to him for assistance in securing employees together with the number and kind of employees desired, the amount of wages or salary to be paid and the place where such employees are to work, and the date of the application and when received." (Emphasis ours)

This terminology definitely indicates that the Legislature contemplated the typical relationship of employer-employee, where regular work is secured, and regular wages or salary is paid.

Section 10 of the Act (Art. 5215, Revised Civil Statutes; Art. 1589, Penal Code) prior to its amendment in 1937, also read:

"OVERCHARGING
Where a fee is charged for obtaining employ-

Hon. Joe Kunschik, Commissioner, page 5

ment, such fee in no event shall exceed the sum of three dollars, which may be collected from the applicant only after employment has been obtained and accepted by the applicant; provided, however, employment agents engaged exclusively in providing employment for skilled, professional or clerical positions may charge, with the written consent of the applicant, <u>a fee, not to exceed twenty per cent of the first month's salary."</u>   (Emphasis ours)

Again we perceive the prevailing idea of a salary, a continuous employment on a month to month basis.

These provisions, it seems to us, demonstrate that the Legislature in enacting this law did not have in contemplation the type of booking agent, or broker, described in your letter, and was not undertaking, in these statutes, to regulate them. We are unwilling, in the absence of a clear legislative intent that such was intended, to give to the term "Employment Agent" and "Employment Office" an all-inclusive meaning covering all activities where an individual may be assisted in securing any type of employment with compensation therefor upon any basis.

The individual which you describe occupies more the position of a "broker" as that term is defined by our courts. For example, the court in the case of PIERCE v. NICHOLS, 110 S.W. 206, 208, says:

"In Keyes v. Johnson, 68 Pa. 42 Judge Sharswood, delivering the opinion of the court said: 'Brokers are persons whose business it is to bring buyer and seller together; they need have nothing to do with the negotiation of the bargain * * * "

It is not, however, necessary that we define the business of the person described in your letter; suffice to say, we are constrained to the opinion that the statutes involved were enacted to regulate the typical and well-recognized employment agent's business

Hon. Joe Kunschik, Commissioner, Page 6

which would not include that of the booking agent as described in your communication.

Accordingly, you are respectfully advised that it is the opinion of this department that the person engaged in the activities described is not required, under Articles 5208-5221 inclusive, supra, and Articles 1584-1593, inclusive, supra, to obtain an employment agency license before engaging in such business.

Trusting that we have adequately answered your inquiry, we remain

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Zollie C. Steakley
Assistant

ZCS:ob

APPROVED APR 19, 1940

ATTORNEY GENERAL OF TEXAS



APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN